# STATE OF MICHIGAN

# COURT OF APPEALS

UNPUBLISHED
July 12, 2016

*In re* JACKSON, Minors.

Nos. 330194, 330195
Clinton Circuit Court
Family Division
LC No.  14-025425-NA

Before:  OWENS, P.J., and BORRELLO and O'BRIEN, JJ.

PER CURIAM.

In these consolidated appeals, respondent mother and respondent father each appeal as of right a trial court order terminating their parental rights to their minor children pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j).  The court terminated respondent mother's parental rights to her child, JJ, with respondent father, and terminated respondent father's parental rights to JJ and two other children, MJ and NJ.  For the reasons set forth in this opinion, we affirm.

## I.  BACKGROUND

Petitioner sought emergency custody of respondents' children[1] based on allegations that respondents were not in compliance with mental health treatment obligations, that respondent father had alcohol and substance abuse issues, and that respondent mother had been alone with her child notwithstanding the order that all parenting time be supervised.

Following an adjudication, the court exercised jurisdiction over the children.  The court found that respondent father had a history of alcohol abuse and domestic violence, and that he left his child in respondent mother's care notwithstanding a court order that limited mother's contact with the child to supervised parenting time.  The court also relied on the testimony of a psychologist that respondent mother had difficulty thinking abstractly and realizing that the consequences of her actions impacted her parenting abilities.

---

[1] An order in a divorce case barred respondent father from having contact with two of his children until he demonstrated compliance with his mental health treatment program.  Respondent mother's parental rights to two other children had been terminated in another case; she had supervised parenting time with her child with respondent.

Following several dispositional review hearings, the trial court authorized a petition for termination. The court held a termination hearing in September and October 2015. At the hearing, a police officer testified that father was arrested for domestic violence in July 2015, and he was found hiding in mother's home. Tammy Cordes, a parent coach for the foster care supportive visitation program, testified that she worked with mother on 12 visits with JJ and with father on six visits. Father was dropped from the program because he missed visits with JJ. Cordes was informed that father and mother had issues with mental health, unemployment, domestic violence, and lack of parenting skills. Cordes stated that the parenting time sessions went well, for a time, but that eventually father began to miss sessions. Cordes told father that he could not continue in the program if he missed any more visits.

According to Cordes, in April 2015, father became very upset when she arrived at his home for a parenting time session, and stated that he had been unable to go to urgent care because she had told him he would be dropped from the program if he missed any more visits. Cordes stated that father was yelling and crying, and so she cancelled the visit because she was concerned that JJ would not be safe in his presence. Cordes stated that mother made progress in the program, but did not give herself credit for it; Cordes was concerned with the fact that mother intended to stay with father. Cordes was concerned that father remained mentally unstable and that his behavior would have a negative effect on JJ.

Kirk Woerner, an infant mental health specialist with the Shiawassee County Community Mental Health Authority, testified that he was assigned to mother's case involving her other children, not subject to the instant termination proceeding (KC and BC). Woerner stated that mother lived with her mother and had no independent source of income. Children's Protective Services (CPS) received a call that mother was neglecting her children and was not taking her medication as prescribed. The children were removed from mother's care.

Woerner stated that he was again assigned to mother's case after JJ was born. His goals were to work on parenting skills and to make certain that mother took her medication as prescribed. At the time, mother lived with father and was financially dependent on him. Woerner stated that mother and father engaged in domestic violence and a child would be adversely affected by witnessing domestic violence. Woerner testified that he saw mother in the hospital on July 29, 2015, and at that point she was suicidal because father had been jailed and she was unable to support herself without his assistance. Woerner stated that mother was diagnosed with a mood disorder and a borderline personality disorder. Woerner testified that if a person with those conditions did not take medication regularly, the person could become dysregulated and inconsistent. Woerner explained that mother's ability to care for a child independently was uncertain and that her intention to stay with father was concerning. Woerner did not believe that mother was able to care for herself without assistance and could only care for a child if she had assistance.

Andrew Barclay, a psychologist, performed a psychological assessment of father. Barclay diagnosed father with antisocial personality disorder with paranoid and narcissistic personality features, generalized anxiety disorder, moderate bipolar disorder, and addiction to alcohol and marijuana. Barclay opined that father's prognosis was guarded because he did not demonstrate that he was willing to change his behavior. Barclay testified that father's ability to be an effective parent was impaired by his lack of focus and tendency toward violence. Barclay

stated that violence and inconsistency sparked anxiety in children. Barclay opined that father was mentally ill and was not competent to care for children.

Rachel Bridgett, a foster care worker for Department of Health and Human Services in Clinton County, recommended that the court terminate the parental rights of both father and mother. Bridgett recited in detail mother's history of relying on and making excuses for father's behavior, mother's complete dependency on father, and mother's history of mental illness, angry outbursts, and ongoing substance abuse. Bridgett stated that she believed that both father and mother had good intentions, but that they were unable to demonstrate mental health stability, financial stability, or freedom from substance abuse or entanglement with the law. Bridgett opined that neither mother nor father had substantially complied with their treatment plans or benefitted from services that were offered to them.

Mother testified that her rights to another child were terminated during the time she was pregnant with JJ. Mother stated that Cordes' assistance helped her regain her confidence as a mother. She stated that she believed that she could be a competent parent without father's assistance. Mother did not believe that any child would be unsafe around father. Mother denied that JJ lacked proper care at the time the petition was filed or at the time of the termination hearing.

Father testified that he never neglected his children or presented a risk of harm to them. Father denied that he was dependent on alcohol or marijuana; he acknowledged that he used marijuana as a medication. He stated that he was addressing his mental health issues. Father admitted that he missed some parenting time sessions because he was doing volunteer work, but contended that the sessions should have been scheduled around his work. Father maintained that he was a good father and that he felt confident that he could regain housing and support his family.

The trial court terminated mother's parental rights to JJ pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j). The court acknowledged that mother made some progress in dealing with substance abuse issues and parenting skills, but noted that her parental rights to another child had been terminated in a case in Shiawassee County and that JJ had been removed from her care in that case. The court noted that mother refused to distance herself from father, notwithstanding father's instability and potential for problems when JJ was present. In July 2015, mother presented to the emergency room reporting that she was overwhelmed and suicidal. Mother remained dependent on father for support, and made excuses for his inappropriate behavior. The court also found that termination of mother's parental rights was in JJ's best interests because the child needed stability and protection from domestic violence.

The court terminated father's parental rights to JJ, MJ, and NJ pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j). The court noted that father was dropped from the visitation support program due to his noncompliance. Father was diagnosed with an antisocial personality disorder with paranoid and narcissistic personality features, an anxiety disorder, and bipolar disorder, and addiction to alcohol and marijuana. A psychologist expressed reservations about father's ability to be a safe parent. The court noted that the evidence showed that father had difficulty controlling himself when he was under pressure and that he had a tendency to react in a violent manner. Such behavior produced anxiety in children. Father was inconsistent in

exercising parenting time, and indicated that at times, the visits interfered with his volunteer work. The court found that termination of father's parental rights was in the children's best interests because the children needed consistency and stability. These appeals ensued.

## II. ANALYSIS

Initially, respondent mother argues that the trial court erred in finding that a preponderance of the evidence supported its decision to take jurisdiction over JJ.

While the lack of subject-matter jurisdiction may be collaterally attacked, a court's exercise of its jurisdiction may only be challenged on direct appeal.[2] Respondent mother's challenge to the sufficiency of the evidence at adjudication constitutes a collateral attack since it arises in the course of an appeal of a supplemental order of disposition terminating her parental rights rather than an appeal of the initial order of disposition. As a result, respondent mother is not entitled to relief on this issue. Nevertheless, we will consider it.

At a jurisdictional trial, the finder of fact must determine whether any of the allegations in the petition have been proven. *In re CR*, 250 Mich App 185, 200; 646 NW2d 506 (2001), overruled on other grounds by *In re Sanders*, 495 Mich 394; 852 NW2d 524 (2014). The standard of proof is a preponderance of the evidence. MCR 3.972(C)(1); *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004).

Pursuant to MCR 712A.2(b)(1), a court properly exercises jurisdiction of a child under 18 years of age

> [w]hose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship.

The trial court did not clearly err in finding that a preponderance of the evidence supported the decision to take jurisdiction over JJ. The undisputed evidence showed that JJ was removed from respondent mother's custody by an order entered in another case, and that she was only to have supervised parenting time with him. However, a CPS worker testified that father admitted that he left JJ unsupervised in mother's care. Moreover, a psychologist who evaluated mother opined that she had difficulty thinking abstractly, had a mood disorder that included a low tolerance for frustration, and that her prognosis for being an effective parent was guarded. In addition, mother's limited ability to think abstractly impaired her ability to make decisions regarding JJ's future or immediate safety. Similarly, mother's low tolerance for frustration made her less able to deal with misbehavior from a very young child. A preponderance of the evidence established

---

[2] *In re Hatcher*, 443 Mich 426, 438-439; 505 NW2d 834 (1993).

that JJ's physical health and well-being would be at risk in mother's custody. MCL 712A.2(b)(1). Accordingly, the trial court did not err by exercising jurisdiction over the child.

Next, mother argues that a statutory ground for termination was not established by clear and convincing evidence.

We review for clear error the court's factual findings in order to terminate parental rights. MCR 3.977(K); *In re Rood*, 483 Mich 73, 90; 763 NW2d 587 (2009). "A finding is "clearly erroneous" [if] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re Rood*, 483 Mich at 91 (quotation marks omitted). We give due regard "to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011).

The trial court terminated mother's parental rights to JJ under MCL 712A.19b(3)(c)(*i*), (g), and (j), which permit termination under the following circumstances:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

> * * *

> (g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

> * * *

> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

"Only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, even if the court erroneously found sufficient evidence under other statutory grounds." *In re Ellis*, 294 Mich App at 32.

Clear and convincing evidence existed to terminate respondent mother's parental rights under each subsection cited by the trial court. JJ was removed from mother's care in another case, and she was given only supervised parenting time with the child. The evidence showed that mother became more consistent in participating in counseling and taking her medication as the case progressed, but the evidence also showed that only two months before the termination

-5-

hearing began, she presented to the emergency room and acknowledged that she was overwhelmed and suicidal. Her condition deteriorated to this point in spite of the fact that JJ was not in her care and she was not responsible for making daily decisions for him at that time. A psychologist diagnosed mother with a mood disorder characterized in part by a low tolerance for frustration, and opined that it was possible that she suffered from bipolar disorder. The psychologist reasoned that respondent mother's condition made her prognosis for developing effective parenting skills guarded. No evidence showed that mother's prognosis improved to any significant extent by the time the termination hearing took place. The trial court did not clearly err in finding grounds for terminating mother's parental rights under MCL 712A.19b(3)(c)(*i*) and (g).

In addition, the evidence showed that mother refused to distance herself permanently from father. The evidence showed that mother remained dependent on father for financial support, and that she was less likely to comply with various aspects of her treatment plan, such as cooperating with random drug screens, when she and respondent father were together. A lack of compliance with a treatment plan is evidence of a failure to provide proper care and custody for a child. See *In re JK*, 468 Mich 202, 214; 661 NW2d 216 (2003). Furthermore, father demonstrated instability and his temperamental nature presented a risk of harm to JJ if mother allowed the child to be in his presence. The court did not clearly err in finding grounds for termination under MCL 712A.19b(3)(j).

Respondent father argues that petitioner did not fulfill its statutory obligation to make reasonable efforts to reunify him with his children, and that petitioner did not make any real attempt to assist him in addressing his issues with mental health and substance abuse.

Petitioner has a statutory obligation to make reasonable efforts to reunify parents and children. MCL 712A.18f(4); see also *In re Terry*, 240 Mich App 14, 26; 610 NW2d 563 (2000). A failure by petitioner to offer a respondent a reasonable opportunity to participate in services creates a gap in the record that requires reversal of an order terminating parental rights. *In re Mason*, 486 Mich 142, 158-160; 782 NW2d 747 (2010). However, a respondent also has a responsibility to participate in services offered by petitioner. *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012).

Father's argument that petitioner did not offer him adequate services in an attempt to reunify him with his children is without merit. Early after the court assumed jurisdiction, a caseworker testified that father was participating in individual therapy and substance abuse counseling. However, a drug screener had been unable to contact father and he missed parenting time classes. The caseworker testified that father was verbally abusive to staff members, resisted the supportive visitation program, and refused to acknowledge that he needed to improve his parenting skills. As the proceedings continued, father continued to miss parenting time sessions and he was dismissed from the parenting coach program. Father was unavailable for drug screening and inconsistent with his participating in mental health treatment. Father was also involved in criminal behavior during the proceeding and he stopped attending parenting time sessions. A caseworker summarized that father failed to substantially comply with his treatment plan and he did not benefit from the services that were offered. Indeed, father admits that he declined to participate in substance abuse treatment and that he was referred for Community Mental Health therapy.

-6-

In short, the record shows that petitioner offered father services including mental health and substance abuse services. However, father was inconsistent with his participation and declined to participate in substance abuse services. Petitioner did not have an obligation to offer additional services when father failed to cooperate in the services that were offered to him. *In re Frey*, 297 Mich App at 248.

Affirmed.

/s/ Donald S. Owens
/s/ Stephen L. Borrello
/s/ Colleen A. O'Brien